Gene R. BUCHHOLZ, Plaintiff
and Appellant,

v.

Leo G. SOGGE, Defendant and Appellee.

No. 12692.

Supreme Court of South Dakota.

Argued Jan. 22, 1980.

Decided March 18, 1981.

Homer Kandaras of Moore, Kandaras, & Cleary, P. C., Rapid City, for plaintiff and appellant; Robert Moore of Moore, Kandaras, & Cleary, P. C., Rapid City, on brief.

John E. Fitzgerald, Jr., of Nelson & Harding, Rapid City, for defendant and appellee.

PATTERSON, Circuit Judge.

Plaintiff-mother, Gene R. Buchholz, has appealed from an order of the trial court denying her request for a modification of the original divorce decree that awarded custody of the parties' only son to defendant, Leo G. Sogge. We affirm.

The parties were married on October 6, 1967, and one son, Carey, was born to the couple during their marriage. On February 17, 1972, based upon his counterclaim for divorce, defendant-father obtained a default divorce from plaintiff-mother. The parties had stipulated that defendant should be awarded custody of the minor child, who at that time was three years old. Pursuant to this stipulation, defendant was awarded custody of Carey, subject to reasonable visitation privileges of plaintiff.

In November of 1976, plaintiff filed a petition seeking a change of custody. By an order of the trial court, plaintiff was allowed to withdraw her petition in return for expanded visitation privileges.

The present action for a change of custody was commenced on January 20, 1978. Prior to the commencement of this proceeding, plaintiff removed the child to her home in Gillette, Wyoming, and kept him there. Defendant instituted a habeas corpus action in Wyoming, which resulted in the child being returned to the custody of defendant. After a show cause hearing on August 15, 1978, the trial court entered findings of fact and conclusions of law and ordered that custody of the child remain with defendant. It is from this order and subsequent denial of a motion for a new trial that plaintiff appeals.

■ "The trial court is vested with broad discretion in deciding questions of child custody modification, and such trial court decisions will be reversed only upon a clear showing of an abuse of that discretion." *Menning v. Menning*, 272 N.W.2d 828, 829 (S.D.1978). This rule has also been stated that this Court will not interfere with this broad discretion "until solemnly persuaded by the record that the court has abused the discretion with which it is clothed by the statute." *Ulver v. Ulver*, 76 S.D. 371, 373–74, 78 N.W.2d 830, 832 (1956), quoting *Wellnitz v. Wellnitz*, 71 S.D. 430, 432, 25 N.W.2d 458, 459 (1946). Put yet another way, "[t]he trial court is permitted a wide discretion, and its discretion will not be disturbed on appeal in the absence of a showing of a manifest abuse, and every presumption supports the reasonableness of the decree." *Huckfeldt v. Huckfeldt*, 82 S.D. 344, 347, 146 N.W.2d 57, 58 (1966). In deciding whether the trial court has abused its discretion, it is not for this Court to substitute its own opinion as to what the trial court should or should not have done at the conclusion of the hearing. *Ulver v. Ulver*, supra; *Davis v. Kressly*, 78 S.D. 637, 107 N.W.2d 5, 8 (1961). As stated in *Ulver*, "a trial judge with [his] intimate and revealing association with the situation is in a better position than are the judges of this court, who see only the written record, to choose the environment more advantageous to the child's welfare." 76 S.D. at 373, 78 N.W.2d at 832.

The trial court is guided by principles well established by this Court in deciding whether to grant a change of custody.

[T]he parent seeking modification of custodial rights has the burden of proving by a preponderance of the evidence that (1) there has been a substantial and material change of circumstances since the decree of divorce was entered, and (2) the welfare and best interests of the child re·quire the modification being sought.

*Menning v. Menning*, supra, 272 N.W.2d at 829–30; *Masek v. Masek*, 90 S.D. 1, 237 N.W.2d 432 (1976). "Either factor standing alone will not justify a change of custody—both must be present. This is a heavy burden, but the courts, the parties and especially the children must be protected from endless and vexatious litigation and the resulting uncertainty flowing therefrom." *Masek v. Masek*, supra, 90 S.D. at 6, 237 N.W.2d at 434.

It is not necessary for this Court to detail the circumstances that existed between the parties at the time of their divorce in 1972 and how these circumstances have changed since that time. The parties are in agreement that the trial court found that there was a substantial and material change of circumstances, since the trial court found that both parents were fit to have the care and custody of the child. This Court need only decide whether the trial court abused its discretion in deciding that the welfare and best interests of the child would best be served by keeping custody with the father.

The evidence produced by plaintiff at the hearing in August of 1978 was for the most part contradicted or rebutted by defendant. The record indicates that defendant is self-employed as an auto body repairman. At the time of the hearing his salary was around $7,000 per year, and he worked anywhere from eight to ten hours a day. Defendant and his son have lived in a number of homes in the Rapid City area. At various times, and at the time of the hearing, defendant and his son were living with defendant's mother on a ranch near Fairburn, South Dakota. The most controversial place that defendant and his son have lived was on some land owned by defendant located in the Black Hills, near Hill City, South Dakota. They lived there for about eight to nine months in a tent, van, and dilapidated trailer. Defendant is building his own home on this land. The living conditions during that period could be termed as being somewhere between pioneer and rustic, as there was no electricity, indoor plumbing, or telephone. There was some testimony that Carey was left at home unsupervised for a few hours at a time. The record also indicates that Carey occasionally got very dirty and sometimes was not dressed warmly enough in the winter. There was no evidence, however, that

Carey was persistently underclothed, dirty, or unsupervised. The record indicates that Carey's teachers considered Carey to be well clothed, neat, and clean. There was no evidence that Carey was ever undernourished, physically abused, or seriously ill. The evidence does show that Carey has a warm, loving relationship with his father. Carey gets "A's" and "B's" in school and his father regularly attends teacher conferences. Carey attends church on a regular basis. Defendant has seen that Carey gets proper medical attention for eye problems that he has had. Defendant on occasion takes his son to a movie, and they often attend car club activities and events and enjoy other social outings together.

Plaintiff has remarried and lives very comfortably in a spacious three bedroom trailer home in Gillette, Wyoming. She also loves Carey very much and could provide him with a good home. Certainly, there are some material things plaintiff could provide for Carey that defendant cannot provide. We are not prepared to say, however, that the trial judge clearly abused his discretion in not modifying the custody decree simply because defendant does not measure up to the image of an ideal father. As the trial judge stated at the conclusion of the hearing, both parties are fit and proper parents. We note the experience of the trial judge in matters such as this and the fact that he had an opportunity to visit with Carey at the conclusion of the hearing. Apparently the trial judge felt that it would be more detrimental than beneficial to sever what has become a closely knit father-son relationship over the past eight years. We cannot say that it was a clear abuse of the trial court's discretion to hold that it was not in the best interests of Carey to uproot him from this relationship.

Similarly, we hold that there was no error in not granting a new trial. The order of the trial court is affirmed.

All the Justices concur.

PATTERSON, Circuit Judge, sitting for HENDERSON, J., disqualified.