Frank **SMOLNIKAR**, Plaintiff and Appellant,

v.

Dale **ROBINSON**, Defendant and Appellee.

No. 17426.

Supreme Court of South Dakota.

Considered on Briefs Oct. 23, 1991.

Decided Jan. 8, 1992.

---

T.L. Secrest, T.L. Secrest Law Firm, Hettinger, Curtis W. Hanks, Lemmon, for plaintiff and appellant.

Wesley W. Buckmaster, Buckmaster and Macy, Belle Fourche, for defendant and appellee.

SABERS, Justice.

Contract seller appeals claiming the trial court erred in allowing parol evidence to change the contract, the promissory note and in concluding that Robinson was the real party in interest. We affirm.

## FACTS

Frank, Wayne and Shirley Smolnikar (Smolnikar) operated a farm/ranch partnership near Ralph, South Dakota. On March 14, 1983, Smolnikar entered into a Contract for Sale of Land and Machinery (Contract) with Dale, Kirk and Kevin Robinson (Robinson). Robinson agreed to pay $250,000 to Smolnikar directly and assume debts of $778,027 for a total of $1,028,027.

In addition to the Contract, Smolnikar and Robinson entered into an agreement whereby Smolnikar would sell his grain in Robinson's name to avoid 1983 income tax. The proceeds of $73,526 were paid to Robinson. In turn, Robinson paid $15,525.98 to satisfy Smolnikar's debts on a pickup and trailer and the balance to Smolnikar directly. Robinson kept the remaining $58,000 for operating expenses and signed a promissory note (Note 1) in that amount with a stated interest rate of 9%. Despite the stated interest rate, a verbal agreement between Smolnikar and Robinson provided that no interest would be paid on Note 1. On June 22, 1984, Robinson paid $20,000 on Note 1 and reduced the balance to $38,000.

At the time of the Contract, Smolnikar was purchasing 12 Noble 2000 Hoe Drills on an installment sales contract from Noble Manufacturing Company. These drills were claimed to be defective. After several repair attempts by Noble, its dealer and

representatives, the drills were determined to be defective and unusable. Versatile Farm Equipment Company purchased Noble and assigned the installment contract to Versatile Credit Corporation (Versatile) prior to the Smolnikar/Robinson Contract in March of 1983.

The Contract contained a specified list of farm machinery which was to be transferred to Robinson as part of the sale. However, this list was not exhaustive nor was it intended to be. A sentence preceding this list stated as follows: "All supplies, repairs, old machinery, feeding equipment and other farm property are to be transferred in addition to the specific items listed below." The drills, although not specifically mentioned in the list, were included in this preliminary statement of intent.[1]

Prior to the Contract, the drills sat unused in one of Smolnikar's leased fields for a period of approximately two years. In May, 1983, Robinson moved the drills and with assistance from Versatile, its agents and employees, again attempted repairs. These attempts were to no avail. Smolnikar was aware of Robinson's possession and attempts at repair.

The installment contract between Smolnikar and Versatile was in default due to Smolnikar's refusal to pay which in turn arose from the claims of defects in the drills. In September, 1983, Smolnikar received notification of Versatile's intent to bring legal action to recover the balance on the installment contract. Smolnikar delivered this letter to Robinson and advised him that this was now his problem.

Robinson retained legal counsel to respond to Versatile's demand. As a result, a partial settlement was reached whereby Robinson relinquished possession of the drills to Versatile and Versatile released Smolnikar from all debt under the installment contract. Shortly thereafter, Robinson filed suit for breach of warranty against Versatile in Smolnikar's name and with Smolnikar's knowledge.

This suit resulted in a net settlement of $28,186.14 to Robinson. Robinson instructed his attorney to make payment directly to Smolnikar. Smolnikar received this payment in February, 1985. On March 9, 1985, Smolnikar obtained a new note (Note 2) in the amount of $38,000 with interest at 9% from Robinson. According to Robinson's testimony, Smolnikar stated at the time Note 2 was made that he did not recall the exact amount of the settlement proceeds and therefore proper credit for the settlement would be given later. Again a verbal agreement provided that no interest would be paid. On January 17, 1987, Robinson paid Smolnikar $7,000 on Note 2. Except for the claimed credit of $28,181.14 from the Noble drills settlement, this left an unpaid balance of $31,000.

In February, 1989, Smolnikar sued Robinson to collect the claimed balance of $31,000 on Note 2.[2] Robinson denied liability and counterclaimed for set-off of $28,186.14 against any sum found to be due. The trial court held that Robinson owed Smolnikar $31,000 on Note 2 without interest, due to the agreement that no interest be charged, but held that Robinson was the real party in interest in the suit against Versatile and entitled to a set-off in the amount which had already been paid to Smolnikar. This left a balance of $2,813.86 due Smolnikar on Note 2.

Smolnikar appealed claiming that the trial court erred in (1) allowing parol evidence to change the Contract, (2) concluding that Robinson was the real party in interest in the suit against Versatile, and (3) allowing parol evidence to change the terms of Note 2.

## 1. THE SALE INCLUDED THE NOBLE DRILLS

■ Smolnikar claims that the court erred in allowing parol evidence concerning the inclusion of the drills in the Contract. However, Smolnikar failed to object to any parol evidence at trial. "It is well settled

---

**1.** It was decided to omit the drills from the specific contract list in order to better preserve a breach of warranty action for Robinson in Smolnikar's name.

**2.** This note was due on March 9, 1986, one year after its making.

that this court will not review a matter on appeal unless a proper objection is made before the trial court." *Matter of Estate of Donahue,* 464 N.W.2d 393, 396 (S.D. 1990); see also, *Anderson v. Johnson,* 441 N.W.2d 675, 677 (S.D.1989); *Johnson v. John Deere Co.,* 306 N.W.2d 231, 239 (S.D. 1981); *Till v. Bennett,* 281 N.W.2d 276, 278 (S.D.1979).

■ Although the Contract does not specifically mention the Noble drills, it contains a "catch-all clause," which provides "All supplies, ..., old machinery, ... and other farm property[.]" Therefore, without regard to parol evidence, the Contract is clear from the "catch-all clause" that the drills were included.

## 2. ROBINSON WAS THE REAL PARTY IN INTEREST IN THE SUIT AGAINST VERSATILE.

■ Smolnikar's second claim is that the court erred in allowing Robinson a set-off against Note 2 by concluding that Robinson was the real party in interest in the suit against Versatile. The findings of fact must support the conclusion of law. *Knodel v. Bd. of Cty. Com'rs., Etc.,* 269 N.W.2d 386, 390 (S.D.1978); *Kirkeby v. Renaas,* 186 N.W.2d 513, 516 (S.D.1971).

The court found that the drills were left in a leased field for approximately two years prior to the execution of the Contract. Following the execution of the Contract, Robinson moved these drills and attempted, with Versatile's help, to repair them with Smolnikar's knowledge and without objection. When Versatile threatened legal action to collect the balance on the drills, Smolnikar informed Robinson that this was his problem now. Robinson hired counsel at his expense, obtained a partial settlement on the debt to Versatile and a favorable settlement on the breach of warranty suit against Versatile. Although the suit was brought in Smolnikar's name, it was with his knowledge and consent. Under these findings and the determination that the drills were included in the Contract, the court properly concluded that Robinson was the real party in interest in

the suit against Versatile and entitled to the settlement proceeds. Therefore, it was proper to conclude that Robinson was entitled to a set-off in the amount of the net settlement proceeds against the $31,000 due on Note 2.[3]

## 3. INTEREST ON THE PROMISSORY NOTE

■ Smolnikar's third claim is that the court erred in allowing parol evidence to change the terms of Note 2. However, Smolnikar failed to object to the introduction of this parol evidence at the time of trial; nor did he make a motion to strike this evidence. As stated above, we will not review a matter on appeal when no objection was made to the trial court. *Donahue,* 464 N.W.2d at 396.

For the above reasons, the trial court properly determined the amount due Smolnikar on Note 2 was $2,813.86. Therefore, the judgment is affirmed.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Two out of three issues are decided by this Court based upon a sua sponte rationale, namely that no objection was made to parol evidence.

This was not urged in the briefs nor discussed by the Justices of this state at our conference hereon.

Bolting from the blue, it strikes a mortal appellate blow.

Therefore, I concur in result only.

---

**3.** The $38,000 face amount had been reduced by the payment of $7,000 on January 17, 1987.